| | |
|---|---|
| Brenda Cruz,<br>60 S. Monastery Avenue<br>Baltimore, Maryland 21229 | In the Circuit Court for<br><br>Baltimore County |
| Plaintiff, | |
| v. | Case No. _____ |
| Lendmark Financial Services, LLC,<br>2118 Usher Street<br>Covington, Georgia 30014 | |
| Serve on:<br>The Corporation Trust Incorporated<br>Resident Agent<br>351 West Camden Street<br>Baltimore, Maryland 21201 | |
| Defendant. | |

## Complaint

Plaintiff Brenda Cruz, ("Ms. Cruz" or "Plaintiff"), on behalf of herself and all others similarly situated, sues Defendant Lendmark Financial Services LLC ("Lendmark") on a class-action basis.

### Introduction

1.      This Complaint challenges Lendmark's systematic perpetration of acts of usury in violation of Maryland law in the transactions of Ms. Cruz and the Class defined below. Although interest is capped at 24% under the Maryland law which Lendmark elected to govern its loans with Ms. Cruz and the Class defined below, Lendmark repeatedly has exceeded that usury limit in those transactions. For example, Lendmark repeatedly flipped Ms. Cruz' loan, and charged her an effective rate of simple interest per year in excess of 24% in multiple credit agreements. In transactions with members of the proposed Class, Lendmark charged an effective rate of simple

interest in excess of 24% per year.

2.       Lendmark elected Maryland's Credit Grantor Closed End Credit Provisions, Md.
Code Ann., Com. Law §§ 12-1001 et seq. ("CLEC"), to govern the credit agreements of Ms. Cruz
and the proposed Class. Under CLEC, the effective rate of simple interest may not exceed 24%
per year. *See* CLEC § 12-1003(a).

3.       CLEC's prohibition on the charging of any interest in excess of 24% per year is
strict and absolute. This strict requirement is designed to protect the interests of borrowers, and to
ensure that consumers have one readily comprehensible way of understanding the cost of their
credit transaction – by looking at the simple interest charge stated in their credit agreement, which,
under CLEC, is the only source from which a lender can derive compensation in a consumer
transaction, unless expressly provided otherwise.

4.       Although Lendmark contractually elected CLEC to govern the credit agreements of
Ms. Cruz and the Class, and contractually promised to obey Maryland law in those credit
agreements, Lendmark repeatedly broke its promises. In its transactions with Ms. Cruz and the
putative Class, Lendmark uniformly and systematically failed to comply with, and violated, the
requirements of CLEC.

5.       These wrongful acts by Lendmark have hurt Ms. Cruz and the putative Class.
Lendmark's usury in violation of Maryland law has enriched it unfairly at the expense of Ms. Cruz
and the Class, a practice this suit seeks to end.

6.       Lendmark's systematic financing and collection of unlawful charges from Ms. Cruz
and the proposed Class, using form documents, makes this case particularly suitable for resolution
through the class action procedure.

## Parties

7.        Brenda Cruz is a natural person who is a citizen of the State of Maryland. She obtained an extension of credit from Lendmark as a consumer. This extension of credit bore an effective rate of simple interest in excess of 24%.

8.        Each member of the putative Class, defined below, is a citizen of the State of Maryland. Each member of the putative Class, defined below, obtained a loan from Lendmark in which the effective rate of simple interest exceeded 24% per year.

9.        Lendmark is a subsidiary of a New York private equity firm, Blackstone, which advertises that it manages more than three hundred billion dollars in assets. Lendmark regularly conducts business in Baltimore County, Maryland. Lendmark is a citizen of the State of Maryland.

## Jurisdiction and Venue

10.       This Court has subject-matter jurisdiction over this case pursuant to Md. Cts. & Jud. Proc. Code Ann. § 1-501.  This Court has personal jurisdiction over Lendmark pursuant to Md. Cts. & Jud. Proc. Code Ann. § 6-103(b), as Lendmark transacts business and performs work and service in the State of Maryland, contracts to supply services in the State of Maryland, regularly does and solicits business and engage in other persistent courses of conduct in the State of Maryland.

11.       Venue is proper in this Court under Md. Cts. & Jud. Proc. Code Ann. § 6-201, as Lendmark carries on a regular business and habitually engages in vocation in Baltimore County, Maryland, and as Ms. Cruz's loan transaction was consummated in Baltimore County, Maryland.

### Factual and Legal Allegations

#### *Ms. Cruz's Transaction*

12.　　　In April, 2010, Ms. Cruz obtained a loan from Lendmark in order to purchase a vehicle. This loan was secured by the vehicle Ms. Cruz purchased. The April 2010 credit agreement for this loan elected to be governed by CLEC.

13.　　　In November, 2010, Lendmark flipped Ms. Cruz's loan, refinancing it using a credit agreement bearing a higher effective rate of simple interest than the April 2010 credit agreement. In fact, the effective rate of simple interest under the November 2010 credit agreement was higher than the rate that was stated on the credit agreement as the simple interest rate. The credit agreement executed in November 2010 elected to be governed by CLEC.

14.　　　Lendmark flipped Ms. Cruz's loan again in September 2011. Once again, the effective rate of simple interest under the September 2011 credit agreement was higher than the rate that was stated on the credit agreement as the simple interest rate. The credit agreement executed in September 2011 elected to be governed by CLEC.

15.　　　Just a few months later, in January of 2012, Lendmark again flipped Ms. Cruz's loan. The January 2012 credit agreement included a $100 "Loan Fee (Prepaid Finance Charge)" and stated that it was charging simple interest at the interest rate of 24% per year. In fact, however, this agreement charged an effective rate of simple interest which was higher than the rate that was stated on the credit agreement as the simple interest rate. The effective rate of simple interest under the January 2012 credit agreement was in excess of the usury limit of 24% per year under CLEC § 12-1003(a). The credit agreement executed in January 2012 elected to be governed by CLEC.

4

16.     Later that year, Lendmark repeated its illegal conduct, and flipped Ms. Cruz's loan again in September, 2012, using a credit agreement which included a $100 "Loan Fee (Prepaid Finance Charge)" and stated that it was charging simple interest at the interest rate of 24% per year. In fact, however, this agreement charged an effective rate of simple interest which was higher than the rate that was stated on the credit agreement as the simple interest rate. The actual effective rate of simple interest again exceeded the simple interest rate stated on credit agreement, and exceeded the usury limit of CLEC § 12-1003(a). The credit agreement executed in September 2012 elected to be governed by CLEC.

17.     Less than a half a year later, Lendmark flipped the loan again, in March, 2013. The March 2013 credit agreement included a $100 "Loan Fee (Prepaid Finance Charge)" and stated that it was charging simple interest at the interest rate of 24% per year. In fact, however, this agreement charged an effective rate of simple interest which was higher than the rate that was stated on the credit agreement as the simple interest rate. Lendmark again charged an effective rate of simple interest in the March 2013 credit agreement which exceeded the simple interest rate stated on the credit agreement, and which exceeded the usury limit of CLEC § 12-1003(a). The credit agreement executed in March 2013 elected to be governed by CLEC.

18.     Six months later, in September, 2013, Lendmark flipped the loan again. The credit agreement executed in September, 2013, included a $100 "Loan Fee (Prepaid Finance Charge)" and stated that it was charging simple interest at the interest rate of 24% per year. In fact, however, this agreement charged an effective rate of simple interest which was higher than the rate that was stated on the credit agreement as the simple interest rate. Lendmark again charged an effective rate of simple interest which exceeded the simple interest rate stated on the credit

agreement, and which exceeded the usury limit of CLEC § 12-1003(a). The loan contract executed in September 2013 elected to be governed by CLEC.

19.     Ms. Cruz's loan initially, in April, 2010, had a principal balance of $8,403.35.  Approximately six years later, Lendmark has asserted that Ms. Cruz's loan has a balance in excess of $8,000.00 – but Ms. Cruz has paid more than twice as much as the principal amount financed.

20.     Lendmark, however, is not entitled to interest on its loan to Ms. Cruz. Lendmark owes Ms. Cruz money.  Lendmark, in direct violation of CLEC, unlawfully charged Ms. Cruz an effective rate of simple interest of more than 24% per year. See CLEC § 12-1003(a).

### Class Action Allegations

21.     In the transactions of Ms. Cruz and members of the Class defined below, Lendmark unlawfully charged an effective rate of simple interest in excess of 24 % per year.

22.     Lendmark has collected from Ms. Cruz and the Class more than the principal amounts of their loans. Unless and until this Court grants the relief Ms. Cruz seeks through this action, Lendmark will continue to engage in business practices which violate Maryland law.

23.     Ms. Cruz brings claims on behalf of a Class consists of:

> All consumers who are Maryland citizens and who entered into a contract to refinance a loan with Lendmark on or before February 26, 2016, who received a credit agreement with Lendmark which states that it is charging simple interest at the interest rate of 24% per year and which charged a $100 loan fee, and from whom Lendmark has collected amounts above the principal amount of their loan.

> Excluded from the Class are all persons whose loans would otherwise qualify them for Class membership where: a) Lendmark marked the subject credit agreement with the word "paid" or

"canceled" and returned to the consumer borrower each agreement, note, or other evidence of the loan, or furnished the consumer borrower with a written statement that identified the loan transaction and stated that the loan had been paid in full, on or before the date six months prior to the date of filing of this Complaint; (b) the subject loan was originated more than three years prior to the filing of this Complaint; or (c) a judgment has been granted in favor of Lendmark on the subject loan on or before the date of the filing of this Complaint. Also excluded from the Class is any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of the subject loan from Lendmark and all employees, officers and directors of Lendmark and its parent or subsidiary companies, and all personnel of the Court.

24.       The Class, as defined above, is identifiable. The Class Representative, Ms. Cruz, is a member of the Class.

25.       The Class is so numerous that joinder of all members is impracticable.

26.       There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual Class members. The common and predominating questions include, but are not limited to:

(a) Whether Lendmark violated CLEC in the transactions of Ms. Cruz and the Class by charging an effective rate of simple interest in excess of 24% per year;

(b) Whether Lendmark breached the credit contracts accepted for Ms. Cruz and each Class member by failing to comply with CLEC;

(e) Whether Lendmark assessed, attempted to collect and/or collected amounts from Ms. Cruz and members of the Class that it had no legal right to demand or collect, and for which the Class members were not liable; and

(f) Whether declaratory and injunctive relief is proper to prevent Lendmark from continuing to seek amounts from Ms. Cruz and Class in violation of CLEC and to compel

7

Lendmark's compliance with CLEC in the future, as to Class member accounts.

27.     The claims of Ms. Cruz are typical of the claims of the respective members of the Class within the meaning of Md. Rule 2-231(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of Lendmark.

28.     Ms. Cruz will fairly and adequately protect the interests of the Class within the meaning of Md. Rule 2-231(a)(4). Ms. Cruz is committed to vigorously litigating this matter. Further, Ms. Cruz has secured counsel experienced in handling consumer class actions and complex consumer litigation.

29.     Neither Ms. Cruz nor Ms. Cruz's counsel has any interests which might cause them not to vigorously pursue this claim.

30.     The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Lendmark within the meaning of Md. Rule 2-231(b)(1)(A).

31.     Lendmark's actions are generally applicable to the respective Class as a whole, and Ms. Cruz seeks equitable remedies with respect to the Class within the meaning of Md. Rule 2-231(b)(2).

32.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(b)(3).

33.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

34.     Ms. Cruz's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## Causes of Action

### Count One
### (Maryland Credit Grantor Closed End Credit Provisions)

35.     Ms. Cruz re-alleges and incorporates by reference the allegations set forth above.

36.     Lendmark acted as a credit grantor in the transactions of Ms. Cruz and the Class.

37.     CLEC permits credit grantors such as Lendmark to provide closed end credit under certain circumstances and subject to certain limitations, including compliance with provisions relating to interest charges.  If a credit grantor charges or collects amounts for interest in compliance with CLEC, the credit grantor may collect certain amounts in addition to the principal amount of the loan.

38.     In the event, however, that the credit grantor fails to comply with CLEC, the credit grantor "may collect only the principal amount of the loan." CLEC §12-1018(a)(2).

39.     In violation of CLEC, Lendmark charged Ms. Cruz and other members of the Class an effective rate of simple interest in excess of 24% per year.

40.     In the transactions of Ms. Cruz and other members of the Class, Lendmark collected amounts in addition to the principal amount of the loans.

### Count Two
### (Breach of Contract)

41.     Ms. Cruz re-alleges and incorporates by reference the allegations set forth above.

42.     CLEC was in effect at the time the credit contracts of Ms. Cruz and all members of the Class were signed by them. The provisions of the CLEC statute become a part of

the contract just as if the parties expressly included the CLEC provisions in their credit contracts. In addition, Lendmark explicitly referred to and incorporated CLEC in its contracts with Ms. Cruz and the other members of the Class.

43.       When Lendmark violated CLEC as set forth above, it materially breached its contracts with Ms. Cruz and the members of the Class.

44.       As a result of Lendmark's breaches of contract with Ms. Cruz and members of the Class, Ms. Cruz and members of the Class have been damaged.  Ms. Cruz and members of the Class have been deprived of the substantial rights granted to them by CLEC, including CLEC's mandate that credit grantors such as Lendmark must not charge an effective rate of simple interest in excess of 24% per year in transactions with Ms. Cruz and other Class members, and that in the transactions of Ms. Cruz and other Class members, Lendmark must not collect amounts in addition to the principal amounts of their loans due to its violations of CLEC. *See* CLEC §§ 12-1003(a); 12-1018(a)(2).

**Count Three**
**(Declaratory and Injunctive Relief under Md. Cts. & Jud. Pro. § 3-406)**

45.       Ms. Cruz re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

46.       This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Ms. Cruz and members of the Class, and under the consumer protections embodied in CLEC.

47.       Lendmark maintains it may collect amounts from Ms. Cruz and members

10

of the Class – including amounts in addition to the principal amount of their loans - even though Lendmark violated CLEC and charged and retained unlawful amounts in the transactions of Ms. Cruz and the Class.

48.      Ms. Cruz and members of the Class have received or will receive collection notices from Lendmark and/or debt collectors demanding payment of the alleged amounts due, and have been sued or will be sued for collection of the sums which Lendmark claims are due. Moreover, Lendmark also notifies credit reporting agencies (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and history of Ms. Cruz and the Class.

49.      These practices continue and will continue unless and until this Court declares and affirms that Lendmark may not collect any amounts in addition to the principal amount of the loans of Ms. Cruz and the Class.

50.      This presents an actual, judicable controversy between the parties relating to the construction of the credit contracts of Ms. Cruz and members of the Class and the application of CLEC to those contracts because Lendmark has sought or likely will seek to collect amounts in addition to the principal amounts of the loans from Ms. Cruz and Class members. Lendmark continues to harm Ms. Cruz and members of the Class by reporting false and derogatory information to credit reporting agencies regarding the accounts in question.

51.      Ms. Cruz and members of the Class have a right to be free from Lendmark's attempts to collect amounts in addition to the principal amounts of their loans which are not collectible as a matter of law under the terms of Lendmark's contracts with Ms. Cruz and members of the Class.

52.      The benefits to Ms. Cruz and members of the Class in obtaining an

11

injunction outweigh any potential harm Lendmark would incur as a result of an injunction, under the balance of convenience test, as Lendmark has no legal or contractual right to collect amounts in addition to the principal amounts of the loans of Ms. Cruz and the Class, and Ms. Cruz and members of the Class would greatly benefit from being relieved of Lendmark's attempts to collect these illegal amounts and to pressure them into making payments by reporting false and derogatory information to credit reporting agencies.

53.    Ms. Cruz and members of the Class will suffer irreparable injury unless the requested injunctions are granted, as Lendmark will continue to attempt to collect, and will collect, amounts from them in violation of the law, and Lendmark will report erroneous and derogatory information to the credit reporting agencies regarding Ms. Cruz and members of the Class.

54.    The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Lendmark from violating the statutory and common law of the State of Maryland in its credit and collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

55.    Ms. Cruz and members of the Class are likely to succeed on the merits of this action, as CLEC explicitly requires that Lendmark must not charge an effective rate of simple interest in excess of 24% per year, and Lendmark did so in the transactions of Ms. Cruz and the Class. *See* CLEC § 12-1003(a).

## Count Four
### (Restitution and Unjust Enrichment)

56.    Ms. Cruz re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

57.    By paying money in addition to the principal amount of their loans to

Lendmark, Ms. Cruz and members of the Class conferred a benefit of these illegally collected amounts upon Lendmark.

58.     Lendmark accepted the benefits conferred upon it by Ms. Cruz and members of the Class when it accepted and retained the money paid in addition to the principal amount of their loans. Lendmark was aware of the benefits conferred on it, as it demanded those benefits.

59.     Lendmark's collection, acceptance and retention of these amounts, when Lendmark was not entitled to the charges as a matter of law, was and continues to be unjust and inequitable. Lendmark has not refunded the unlawfully collected amounts to Ms. Cruz and members of the Class.  Lendmark should not be permitted to retain the benefits of those unlawful collections.  Lendmark's continued withholding of the unlawfully collected amounts is improper.

60.     Ms. Cruz and members of the Class conferred these unjust benefits upon Lendmark after and as a result of Lendmark's misconduct as set forth herein.

### Count Five
### (Maryland Consumer Protection Act)

61. Ms. Cruz re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

62. Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia,* in the extension of consumer credit and in the collection of consumer debts.  CPA, § 13-303(3) and (4).

63.     As a "person" under the CPA, § 13-101(h), Lendmark is prohibited from engaging in unfair **or** deceptive trade practices.

64.     Lendmark's systematic behavior described above, including its violations of CLEC in its contracts with Ms. Cruz and other Class members, combined with Lendmark's demand that Ms. Cruz and other Class members pay amounts which were not due to Lendmark, are unfair practices in violation of the CPA.

65.     In addition, the CPA specifically prohibits Lendmark from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers. CPA, § 13-301(1).

66.     The CPA further prohibits Lendmark from failing to state a material fact if the failure deceives or tends to deceive. CPA, § 13-301(3).

67.     In violation of the CPA, § 13-303(3) - (4) and § 13-301(1), Lendmark told Ms. Cruz and members of the Class that the amounts it was charging were permitted by law, and that Ms. Cruz and the Class owed amounts in addition to the principal amounts of their loans which, in fact, Ms. Cruz and members of the Class did not owe and which Lendmark could not lawfully collect due to its failures to comply with CLEC. In these communications with Ms. Cruz and other members of the Class, Lendmark engaged in misrepresentations and failures to state material facts which deceived and tended to deceive, and, again, violated the aforesaid sections of the CPA. These written statements were false and misleading and tended to deceive Ms. Cruz and members of the Class.

68.     In violation of the CPA, § 13-303(3) - (4) and §13-301(3), Lendmark failed to disclose to Ms. Cruz and members of the Class material facts. Specifically, Lendmark failed to disclose as required by CLEC the effective rate of simple interest in the transactions of Ms. Cruz and the Class, failed to disclose that the effective rate of simple interest in the transactions of Ms. Cruz and the Class was in excess of 24% per year, and failed to disclose that Lendmark was not

14

entitled to collect the amounts it was imposing in addition to the principal amount of the loans in the transactions of Ms. Cruz and the Class.

69.     This failure to disclose material facts led Ms. Cruz and members of the Class to make payments which were not due and which they would not have made had Lendmark informed them of the material facts. Lendmark committed unfair and deceptive practices by collecting and attempting to collect on alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101 *et seq.*, including §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

70.     In violation of the CPA, §§ 13-303(3) - (4) and § 13-301(1) and (3), and as part of an effort to compel Ms. Cruz and members of the Class to make payments which were not due, Lendmark made false and misleading reports to credit reporting agencies regarding the amounts which Ms. Cruz and members of the Class owed on their accounts.

71.     As a result of Lendmark's unfair and deceptive trade practices in violation of the CPA, Ms. Cruz and members of the Class were caused injury and loss.

WHEREFORE, Ms. Cruz demands:

A.     a declaratory judgment establishing that Lendmark may not collect any amounts in addition to the principal amount financed in the loan accounts of Ms. Cruz and members of the Class;

B.     an order granting Ms. Cruz and members of the Class a preliminary and permanent injunction prohibiting Lendmark from collecting or attempting to collect any amounts in addition to the principal amounts of the loans of Ms. Cruz and members of the Class;

C.     payment to Ms. Cruz and members of the Class of all sums paid in addition to the principal amount financed on each of their loans, in an aggregated amount in excess of $75,000;

and,

D.      such other and further relief as the nature of this case may require.

Respectfully submitted,

Benjamin H. Carney
bcarney@GWCfirm.com
Martin E. Wolf
mwolf@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
102 West Pennsylvania Ave.
Towson, Maryland 21204
Telephone: (410) 825-2300
Facsimile: (410) 825-0066

**Attorneys for Ms. Cruz and the Class**

## JURY TRIAL

Plaintiff, Ms. Cruz, demands trial by jury on all issues triable of right by a jury.

_____
Benjamin H. Carney